*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LM,

        Petitioner-Appellee,

v

BM,

        Respondent-Appellant.

UNPUBLISHED
June 17, 2021

No. 352461
Macomb Circuit Court
LC No. 2019-009403-PP

Before: GLEICHER, P.J., and CAVANAGH and LETICA, JJ.

PER CURIAM.

Respondent appeals as of right the order denying his motion to terminate a personal protection order (PPO). On appeal, respondent argues that the trial court erred because petitioner did not meet her burden of proof, the burden of persuasion was erroneously placed on respondent, the trial court denied respondent a fair and impartial trial, and the trial court declined to sanction petitioner. We affirm.

## I. BACKGROUND FACTS

This case arises from a domestic-relationship ex parte PPO entered against respondent in 2019, which prohibited him from possessing firearms and obtaining a concealed pistol license (CPL). The parties were married, but divorced in 2018. At the time this case arose, they had two minor children, ZM and TM. In May 2018, respondent was arrested and charged with domestic violence. As a result of the criminal charges, the criminal court imposed a no-contact order between the parties. Because the parties shared custody of their children, the no-contact order included a specific exception for communication regarding them.

In October 2019, TM, who was in petitioner's care, injured his hand late at night and petitioner took him to the emergency room. Unbeknownst to petitioner, respondent had placed a tracking application on TM's phone; consequently, respondent received an alert that TM was at the hospital. TM was diagnosed with a minor hand injury and discharged from the hospital. However, in the days after the hospital visit, there were 18 telephone exchanges between respondent and TM. Petitioner became aware of the tracking application and filed for an ex parte PPO. In the petition, petitioner alleged respondent was attempting to call her through her children

and that respondent placed the tracking application on TM's phone to monitor petitioner's location. Petitioner also made other allegations regarding respondent's purported violent past. The trial court entered the ex parte PPO. Respondent later moved the trial court to terminate the PPO. The trial court denied respondent's first motion to terminate the PPO. Respondent filed another motion to terminate, which the trial court also rejected. Respondent moved for reconsideration, and the trial court denied that motion as well. This appeal follows.

## II. STANDARD OF REVIEW

A PPO is an injunctive order—therefore, a trial court's decision whether to issue a PPO is reviewed for an abuse of discretion. *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Id*. "A trial court's findings of fact are reviewed for clear error." *Sweebe v Sweebe*, 474 Mich 151, 154; 712 NW2d 708 (2006). "A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made." *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 652; 662 NW2d 424 (2003). Questions of statutory interpretation are reviewed de novo. *Hayford*, 279 Mich App at 325.

> Michigan courts construe court rules in the same way that they construe statutes. Well-established principles guide this Court's statutory [or court rule] construction efforts. We begin our analysis by consulting the specific . . . language at issue. This Court gives effect to the rule maker's intent as expressed in the court rule's terms, giving the words of the rule their plain and ordinary meaning. If the language poses no ambiguity, this Court need not look outside the rule or construe it, but need only enforce the rule as written. This Court does not interpret a court rule in a way that renders any language surplusage. [*Kloian v Domino's Pizza LLC*, 273 Mich App 449, 458; 733 NW2d 766 (2006) (quotation marks and citations omitted).]

## III. ENTRY AND CONTINUATION OF THE PPO

Respondent argues that the trial court erred when it concluded there were sufficient facts to warrant the issuance and continuance of the PPO. We disagree.

A PPO is an injunctive order that is issued by a circuit court. MCL 600.2950(30)(d). "[A]n ex parte PPO constitutes a 'restraining order granted without notice' under MCR 3.310(B)(5), because it is issued ex parte and restrains a respondent from committing certain acts." *Pickering v Pickering*, 253 Mich App 694, 698; 659 NW2d 649 (2002). "In cases in which an ex parte order is sought, the petitioner must show that the danger is imminent and that the delay to notify the respondent is intolerable or in itself dangerous." *Kampf v Kampf*, 237 Mich App 377, 385; 603 NW2d 295 (1999).

Respondent presents two arguments—first, that petitioner wrongly "filed under two statutes regarding Personal Protection Orders," and second, that the trial court erred in granting the PPO because the petition alleged unsubstantiated falsehoods. In light of the structure of respondent's arguments, our analysis is two-fold. First, we consider whether petitioner indeed

"filed under two statutes." Second, we analyze the merits of respondent's arguments related to MCL 600.2950 and MCL 600.2950a.

In Michigan, there are two statutes that govern PPOs—MCL 600.2950 and MCL 600.2950a. "The nature of the petitioner's relationship with the respondent and the respondent's acts govern which form of PPO is appropriate." *TM v MZ*, 501 Mich 312, 315; 916 NW2d 473 (2018) (quotation marks and citation omitted). MCL 600.2950 addresses PPOs in the context of domestic relationships, while MCL 600.2950a(1) and (2) address stalking-type and sexual-assault PPOs, respectively. See *TM*, 501 Mich at 315-316.

Respondent's argument on this point is confusing—respondent appears to assume that because the PPO prohibited him from "stalking as defined under MCL 7500.411h and MCL 750.411i," petitioner sought a stalking-type PPO under MCL 600.2950a. While the trial court never explicitly stated that the PPO was granted under MCL 600.2950, "[t]he nature of the petitioner's relationship with the respondent and the respondent's acts govern which form of PPO is appropriate." *TM*, 501 Mich at 315 (quotation marks and citation omitted). Here, it is undisputed that respondent and petitioner were previously married, have children, and are now divorced. See MCL 600.2950(1) (providing that a petitioner may file a petition for a PPO against the petitioner's "former spouse" or "an individual with whom he or she has had a child in common . . . ."). Moreover, the petition for the PPO was entitled, "Petition for Personal Protection Order (Domestic Relationship)," and the trial court's order granting the PPO was entitled, "Personal Protection Order (Domestic Relationship)." Because the parties were previously married and the trial court's PPO specified a "domestic relationship," the PPO was a domestic-relationship PPO under MCL 600.2950.

We turn to the second question of whether the trial court erred in denying respondent's motion to terminate the PPO because the petition only alleged unsubstantiated facts, which respondent asserts were later proven false. With respect to MCL 600.2950, a trial court must issue a PPO where it finds that "there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in subsection (1)." MCL 600.2950(4). These include, in part:

> (a) Entering onto premises.
>
> (b) Assaulting, attacking, beating, molesting, or wounding a named individual.
>
> (c) Threatening to kill or physically injure a named individual.
>
> (d) Removing minor children from the individual having legal custody of the children, except as otherwise authorized by a custody or parenting time order issued by a court of competent jurisdiction.
>
> (e) Purchasing or possessing a firearm.
>
> (f) Interfering with petitioner's efforts to remove petitioner's children or personal property from premises that are solely owned or leased by the individual to be restrained or enjoined.

(g) Interfering with petitioner at petitioner's place of employment or education or engaging in conduct that impairs petitioner's employment or educational relationship or environment.

\* \* \*

(i) Having access to information in records concerning a minor child of both petitioner and respondent that will inform respondent about the address or telephone number of petitioner and petitioner's minor child or about petitioner's employment address.

(j) Engaging in conduct that is prohibited under . . . MCL 750.411h and 750.411i.

\* \* \*

(l) Any other specific act or conduct that imposes upon or interferes with personal liberty or that causes a reasonable apprehension of violence. [MCL 600.2950(1)(a) through (l).]

Relating to MCL 600.2950(a)(j), MCL 750.411h(1) provides these pertinent definitions:

(a) "Course of conduct" means a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose.

(b) "Emotional distress" means significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling.

(c) "Harassment" means conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose.

(d) "Stalking" means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(e) "Unconsented contact" means any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued. Unconsented contact includes, but is not limited to, any of the following:

(*i*) Following or appearing within the sight of that individual.

(*ii*) Approaching or confronting that individual in a public place or on private property.

(*iii*) Appearing at that individual's workplace or residence.

(*iv*) Entering onto or remaining on property owned, leased, or occupied by that individual.

(*v*) Contacting that individual by telephone.

(*vi*) Sending mail or electronic communications to that individual.

(*vii*) Placing an object on, or delivering an object to, property owned, leased, or occupied by that individual.

(f) "Victim" means an individual who is the target of a willful course of conduct involving repeated or continuing harassment.

"The petitioner bears the burden of establishing reasonable cause for issuance of a PPO and of establishing a justification for the continuance of a PPO at a hearing on the respondent's motion to terminate the PPO." *Hayford*, 279 Mich App at 326 (citations omitted). "The trial court must consider the testimony, documents, and other evidence proffered and whether the respondent had previously engaged in the listed acts." *Id*. Further, the issuance or continuance of a PPO requires "evidence of two or more acts of unconsented contact that caused the victim to suffer emotional distress and that would cause a reasonable person to suffer emotional distress." *Id*. at 330.

The trial court stated it initially granted the PPO because "[petitioner] convinced me at the last hearing that she met her burden of proof regarding a reasonable fear for her safety or being harassed." Further, the trial court stated that continuing the PPO after the November 25, 2019 hearing on respondent's motion to terminate was appropriate because:

[The trial court] found that [petitioner's] testimony that day was more credible than [respondent's], as it related to the harassment issue. Furthermore, I also made comments about whether or not I felt it was appropriate that [respondent is] using Find My Phone and tracking that phone while in the company of the [petitioner], that also didn't feel appropriate or necessary to me. That was another reason I continued the PPO. Another reason that I continued the PPO is because in the Petition, it indicated that [petitioner] found bullets in her bedroom and that there were several fake phone calls . . . .

At the hearing on respondent's second motion to terminate, the trial court concluded:

I'm not dismissing the [PPO]. I find that [petitioner] met her burden based on the fact that there were repeated phone calls that day, based on the fact that there was tracking going on with the phone[;] I'm not changing it. If you can convince me after a period of time that this all will calm down, I'm happy to revisit the issue.

-5-

Respondent contends this conclusion by the trial court, declining to terminate the PPO, was erroneous because "[t]here was no hint or threat of any assaultive behavior by" him. To support this contention, respondent contends the trial court wrongly accepted petitioner's version of events over his version. Respondent's argument is problematic in two ways. First, respondent essentially asks this Court to engage in a credibility determination on the basis of the testimony presented to the trial court. The trial court credited petitioner's testimony over respondent's testimony. Because the trial court has the ability to not only hear the testimony, but also to personally observe the witnesses and evaluate their demeanor, we defer to the trial court for credibility determinations. See *Pickering*, 253 Mich App at 702.

Second, under MCL 600.2950(4), it is not necessary that a petitioner *prove* that certain acts occurred. Instead, a petitioner must only establish that there is "reasonable cause to believe" the respondent may commit one of the prohibited acts. Here, the trial court explicitly stated it found reasonable cause "on the basis of harassment." Under MCL 750.411h(c), harassment is defined as "repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress."

It is undisputed that there were 18 phone calls between respondent's phone and TM's phone on a particular day, and respondent conceded that he placed the tracking application on TM's telephone. Petitioner asserted that by making the phone calls and placing the tracking application, respondent "is harnessing [sic] me through my children." While respondent claims that petitioner is not credible, the trial court properly considered petitioner's statements in support of her petition and did not abuse its discretion in deciding to continue the PPO on the basis of its conclusion that respondent might commit one of the prohibited acts.

Finally, it is not necessary for this Court to consider respondent's argument that petitioner failed to prove the elements for antistalking relief under MCL 600.2950a. As noted, the PPO at issue was entered as a "domestic relationship" PPO under MCL 600.2950, not as a stalking-type PPO under MCL 600.2950a. Moreover, the trial explained to respondent that the PPO at issue was not a stalking-type PPO. Consequently, an analysis of the merits of MCL 600.2950a is unnecessary because that statute does not govern the issues here.

IV. BURDEN OF PERSUASION

Respondent argues the trial court impermissibly placed the burden of persuasion on him to justify the termination of the PPO. We disagree.

Under MCL 600.2950(13), "[t]he individual restrained or enjoined may file a motion to modify or rescind the personal protection order and request a hearing under the Michigan court rules." Thereafter, "the petitioner [has] the burden of persuasion in a hearing held on a motion to terminate or modify an ex parte PPO." *Pickering*, 253 Mich App at 699. Respondent's arguments on appeal are unclear. Respondent appears to believe petitioner's testimony was insufficient to satisfy her burden of persuasion, especially in the face of documentary evidence that he believes contradicts petitioner's assertions in her verified statement and in her statements on the record.

Respondent's argument is unavailing for three reasons. First, the statute explicitly *allows* for a trial court to accept testimony in finding reasonable cause to enter a PPO. MCL

-6-

600.2950(4)(a) ("In determining whether reasonable causes exists" a trial court "shall consider all of the following," including "[t]estimony, documents, or other evidence offered in support of the request for a personal protection order."). Thus, it is not error for the trial court to accept testimony to support the issuance of a PPO.

Second, MCL 600.2950(4) plainly states, "[t]he court *shall* issue a personal protection order under this section if the court determines that there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in subsection (1)." (Emphasis added.) "The term 'shall' is mandatory." *Ellison v Dep't of State*, 320 Mich App 169, 180; 906 NW2d 221 (2017) (citation omitted). Accordingly, a trial court *must* enter a PPO, even where reasonable cause arises solely from a petitioner's testimony.

Third, the trial court applied the correct burden to its analysis after granting the initial petition and after respondent's first motion to terminate. This is evinced by two exchanges between the trial court and respondent's attorney:

> [*Respondent's Attorney*]: I want to also clarify, also a couple things. Last time we were in Court with regard to case law [sic], *Pickering v Pickering*, [253 Mich App at 699,] my, it's not my burden of proof with regard to the, even though we filed a Petition to Terminate. The petition, the burden of proof and persuasion is still with the person who asked for the PPO that was entered on an Ex Parte basis. So, [petitioner] has to indicate to this Court why she believes whatever she filed is enough to persuade this Court in response to whatever I've written in my Brief, and the documents I've provided that the PPO should be continued.
>
> *The Court*: She did that.
>
>                 \*    \*    \*
>
> [*Respondent's Attorney*]: So, what, I'm trying to find out when I'm arguing this, what has she provided, I have not seen what she's provided that would mag, make up a clear and convincing case.
>
> *The Court*: Her testimony.
>
> [*Respondent's Attorney*]: Her testimony has provided nothing.
>
> *The Court*: Was credible and believable.
>
> [*Respondent's Attorney*]: So, my client is believable also before the Court, and I'm credible with regard—
>
> *The Court*: Okay. We're not, listen—
>
> [*Respondent's Attorney*]: To both cases.
>
> *The Court*: Not according to me. I'm the finder of fact, not you. Sorry. I mean, that's just the reality of the situation. I'm the finder of fact.

[*Respondent's Attorney*]: You, Your Honor, you also—

*The Court*: I found that her testimony that day was more credible than hers (sic), as it related to the harassment issue. Furthermore, I also made comments about whether or not I felt it was appropriate that he's using Find My Phone and tracking that phone while in the company of the mother, that also didn't feel appropriate or necessary to me. That was another reason that I continued that PPO. Another reason that I continued the PPO is because in the Petition, it indicated that she found bullets in her bedroom and that there were several fake phone calls . . . .

Further, the trial court applied the correct burden after respondent's second motion to terminate stating:

I find that [petitioner has] met her burden based on the fact that there were repeated phone calls that day, based on the fact that there was tracking going on with the phone[;] I'm not changing it. If [respondent] can convince me after a period of time that this all will calm down, I'm happy to revisit the issue.

On this record, the trial court correctly placed the burden of persuasion on petitioner for the issuance and continuation of the PPO. Indeed, the trial court reached its decision on respondent's second motion to terminate after hearing respondent's arguments and viewing respondent's evidence purporting to support the motion for termination.[1]

Finally, we note that respondent appears to make a constitutional argument, asserting that "utilizing an app for locating his son pursuant to MCL 750.411h(1)(c) is [sic] constitutionally protected activity (raising his son), and serves a legitimate purpose (realizing that his son is located at a hospital)." "It is not enough for an appellant in his brief simply to . . . assert an error and then leave it up to this Court to . . . unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 220; 761 NW2d 293 (2008). Because respondent failed to provide any legal authority or present an argument explaining the alleged constitutional violation, respondent has abandoned this argument on appeal.

## V. JUDICIAL BIAS

Respondent argues he is entitled to appellate relief because the trial court's conduct during the hearing on his second motion to terminate demonstrated bias and judicial partiality in favor of petitioner. We disagree.

---

[1] Respondent also alleges that the trial court improperly allocated the burden of persuasion on him with regard to MCL 600.2950a. As already discussed, the PPO was not issued under that statute, and is therefore inapplicable to this case.

## A. PRESERVATION AND STANDARD OF REVIEW

To preserve the issue of judicial bias, a party should raise the issue to the trial court. MCR 2.003(D); *In re Contempt of Henry*, 282 Mich App 656, 679; 765 NW2d 44 (2009) ("Because appellant moved to disqualify the judge in the trial court, the issue is preserved for appellate review."). Respondent claims that his rights to due process were violated because of judicial bias. However, respondent never raised the issue of judicial bias to the trial court, therefore this issue is unpreserved. MCR 2.003(D); *In re Contempt of Henry*, 282 Mich App at 679.[2]

Generally, "[t]he question whether judicial misconduct denied [a] defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). However, "[o]ur review of . . . unpreserved issues is limited to plain error." *Hogg v Four Lakes Ass'n, Inc*, 307 Mich App 402, 406; 861 NW2d 341 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Bennett v Russell*, 322 Mich App 638, 643; 913 NW2d 364 (2018) (quotation marks and citation omitted). As to the third requirement, "an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

## B. LAW AND ANALYSIS

Respondent's arguments are premised on our Supreme Court's analysis in *Stevens*, 498 Mich at 168. The *Stevens* Court considered "the appropriate standard for determining when a trial judge's conduct in front of a jury has deprived a party of a fair and impartial trial." *Id*. at 164. Under *Stevens*, "[a] judge's conduct pierces [the veil of impartiality] and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. Respondent's reliance on *Stevens*, however, is misplaced. The issue presented to the Court in *Stevens* was whether the trial court violated the *criminal* defendant's right to a fair and impartial *jury* trial. *Id*. at 170-171. *Stevens* considered whether the trial court's conduct was sufficiently partial so as to bias the jury in favor of one party and create a structural error. *Id*. at 178. This case is different from *Stevens* in two important ways: it is not a criminal case and the trial court was the fact-finder. In direct contrast to *Stevens*, there is no concern that the trial court's conduct created bias in the jurors' minds.

Regardless, "[d]ue process requires that an unbiased and impartial decision-maker hear and decide a case." *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012). "A trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *Id*. But the presumption is overcome where " 'the trial court display[ed] a deep-seated favoritism or antagonism that would make fair judgment impossible.' " *Eldred v Ziny*, 246 Mich App 142, 152; 631 NW2d 748 (2001) (alteration in original), quoting *Cain v Dep't of*

---

[2] We note that while respondent's counsel appeared to argue against the trial court's statements that he committed "grievable" offenses, neither counsel nor respondent explicitly objected to or made a motion regarding potential judicial bias.

*Corrections*, 451 Mich 470, 496; 548 NW2d 210 (1996). A trial court's "rulings against a litigant, even if erroneous, do not themselves constitute bias or prejudice sufficient to establish a denial of due process[.]" *In re Susser Estate*, 254 Mich App 232, 237; 657 NW2d 147 (2002). "In fact, a trial judge's remarks made during trial, which are critical of or hostile to counsel, the parties, or their cases, ordinarily do not establish disqualifying bias." *Kern v Kern-Koskela*, 320 Mich App 212, 232; 905 NW2d 453 (2017) (quotation marks and citation omitted). "Under MCR 2.003(C)(1)(b), the test for determining whether there is an appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." *Id*. (quotation marks and citation omitted).

As an initial matter, we note that respondent has waived some of his allegations of judicial bias. Although respondent makes several assertions about the trial court's questioning, respondent fails to point to any specific statements by the trial court supporting his assertions.[3] As already mentioned, "[i]t is not enough for an appellant in his brief simply to . . . assert an error and then leave it up to this Court to . . . unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mettler Walloon, LLC*, 281 Mich App at 220. Thus, some of respondent's arguments on this point are abandoned.

Respondent did, however, present specific examples of what he alleges was judicial bias— each of which are addressed in turn. First, respondent argues the trial court was "inflammatory and inappropriate" when it "accus[ed] counsel for [respondent] of scaring [petitioner] by serving her personally." In context, petitioner's counsel was informing the trial court about respondent allegedly calling TM and having TM place the call on speakerphone so that respondent could talk to petitioner. Counsel then pivoted to the issue of respondent's counsel personally serving petitioner at her house, while she was in the driveway.[4] Respondent's counsel then launched into a discussion about his photographing and filming of petitioner:

> [*Respondent's Counsel*]: I'll respond to a couple of things. What I wrote in that Brief has nothing to do what [sic] happened, that was at the District Court in, in Romeo, when [petitioner] came out and asked for an escort to her car because

---

[3] For example, respondent asserts that the trial court's "intimidating questions and severe attitude toward [respondent] was [sic] patently inappropriate." Specifically, respondent avers that the trial court questioned him in a manner consistent with "prosecutorial cross-examination, rather than a mere attempt at clarification." He believes that the trial court "took an impermissible swipe at [his] credibility [and] also mischaracterized his testimony." Respondent also takes issue with the trial court's "rapid-fire questioning, and interruptions about a subject that did not require clarification, [and] served [sic] only to discredit" him. He states that the trial court "believed [it] could permissibly make substantive points or arguments in the place of counsel for [petitioner] during [its] questioning . . . ." Finally, he argues against the "imbalance" of the trial court's questioning toward respondent and the trial court's apparent failure to utilize the "standards to be met for stalking" in its analysis.

[4] It is not entirely clear from the record whether the response that respondent's counsel served on petitioner was related to this case or the domestic violence case.

we were standing by our vehicles.  I just happened to take a picture of what she did.  But, even that, the Court Officer just looked at me and said—

> [*Petitioner's Counsel*]:  Why do you need to be taking pictures of her?
>
> *The Court*:  You took a picture of her?
>
> [*Petitioner*]:  And a video?
>
> [*Petitioner's Counsel*]:  And a video being esc—
>
> [*Respondent's Counsel*]:  I took a picture of her to show what she was doing with the Court Officer.
>
> *The Court*:  So, are you a witness or an attorney?
>
> [*Respondent's Counsel*]:  I took it for purposes of my argument with—when I make an allegation or put something in my [b]rief, I have the picture to show it.  It was at the Courthouse, I showed what was going on.
>
> *Trial Court*:  So, she's the, she's the complaining witness in a domestic violence case and the attorney of record of the Defendant is taking video and pictures of her as she walks to her car with a Deputy escort?
>
> [*Respondent's Counsel*]:  No, to show with her, her conduct with regard to that.  She's afraid of me?  No.

The trial court later noted that "[f]or the [respondent's] attorney to take picture [sic] and recordings of [petitioner] that, to me, might even be grievable."[5]

We disagree with respondent's assertion that the trial court's remarks here satisfy the standard of "deep-seated favoritism or antagonism."  Instead, the trial court's statements were in regard to petitioner's reasonable fear of respondent's counsel.  The trial court even asked petitioner whether she was afraid of respondent's counsel, and petitioner said that she was.  Instead of displaying any sympathy or acknowledging that his actions were inappropriate, counsel doubled down and said that he acted appropriately by photographing and videoing petitioner, who requested that a court deputy escort her to her vehicle because of respondent's counsel.  Although respondent asserts that the trial court was unduly biased against him, this exchange shows that the trial court's statements were justified and appropriate.

Second, respondent takes issue with the trial court's reference to the size of the court file as an example of judicial bias.  Specifically, respondent states "[t]he [j]udge, however, encourages that [petitioner] should be more adversarial and file more motions and complaints with the Friend

---

[5] We note that while respondent's counsel expresses umbrage at the trial court's statement that his actions might have been grievable, counsel freely acknowledged: "I have been grieved many times.  And, I have . . . people wanting to file grievances."

of the Court." Respondent's argument is misplaced—the trial court's statement on this point encouraged *respondent* to file a grievance with the Friend of the Court when the parties have parenting time disputes. On this record, respondent does not overcome the presumption that the trial court acted as fair, impartial decisionmaker when the trial court advised respondent about the correct process for resolving parenting-time disputes.

Respondent also believes the trial court was biased because it did "not us[e] the standard for finding anti-assaultive or anti-stalking, the [j]udge made quantum leaps of logic at the request of [petitioner] that contacting [respondent's] son constituted stalking!" Again, this does not show judicial bias. As discussed, a domestic relations PPO may be issued where "there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in subsection (1)." MCL 600.2950(4). Thus, under MCL 600.2950, there is no requirement that a judge "find" that a respondent stalked or assaulted the protected party—only that there is "reasonable cause" to believe one of the listed actions may occur. Because respondent's argument does not align with the plain language of the statute and because an unfavorable ruling is not indicative of favoritism or bias, respondent again fails to establish a deep-seated favoritism toward petitioner so as to overcome the presumption that the trial court acted with impartiality. *Eldred*, 246 Mich App at 152; *In re Susser Estate*, 254 Mich App at 237.

Respondent next asserts that judicial bias was shown where the trial court called the tracking application on TM's phone "creepy." The trial court stated, "[i]f I found out that my ex-husband put trackers on my kids' phones, I'd be creeped out by that, it's creepy. And, I, honestly, if she did that to you, I would say the same thing to her, I don't like it, it's invasive." Again, "a trial judge's remarks made during trial, which are critical of or hostile to counsel, the parties, or their cases, ordinarily do not establish disqualifying bias." *Kern*, 320 Mich App at 232 (quotation marks and citation omitted). Though the trial court's remarks on this point are "critical" of respondent's actions, the trial court's statement that it "would say the same thing to her," suggests that the trial was unbiased in its thinking. And respondent again fails to overcome the presumption of judicial impartiality.

Finally, respondent appears to present an argument of judicial bias when "the [j]udge took no action against [petitioner] for taking a loan against a retirement account that was waiting to be divided in conformity with the Judgment of Divorce." In making this argument, respondent essentially asks this Court to consider issues presented in the parties' tangential divorce case. See MCR 7.203 (listing the bases for this Court's jurisdiction). It is inappropriate for this Court to consider this issue on appeal because only the case involving the PPO, not the divorce case, is properly before us. In sum, respondent has not established that the trial court displayed "a deep-seated favoritism or antagonism that would make fair judgment impossible.' " *Eldred*, 246 Mich App at 152. Consequently, respondent has failed to overcome the presumption that the trial court acted as a "unbiased and impartial decision-maker." *Mitchell*, 296 Mich App at 523.

## VI. SANCTIONS

Respondent argues that the trial court abused its discretion when it declined to impose sanctions against petitioner under MCR 1.109, after he presented what he purports was contradictory evidence of petitioner's assertions. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Even though the trial court did not address the issue of sanctions, respondent's second motion to terminate the PPO requested that the trial court sanction petitioner because of her alleged distortion of the facts. Because respondent raised the issue in the trial court, this issue is preserved. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010); *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443-444; 695 NW2d 84 (2005).

A trial court's decision regarding sanctions is reviewed for an abuse of discretion. *Kaftan v Kaftan*, 300 Mich App 661, 668; 834 NW2d 657 (2013). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Souden v Souden*, 303 Mich App 406, 414; 844 NW2d 151 (2013) (quotation marks and citation omitted). A trial court's factual findings are reviewed for clear error, and questions of law are reviewed de novo. *Davis v City of Detroit Fin Review Team*, 296 Mich App 568, 623; 821 NW2d 896 (2012). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 534; 773 NW2d 57 (2009) (quotation marks and citation omitted).

## B. LAW AND ANALYSIS

In pertinent part, MCR 1.109(E) states:

> (5) Effect of Signature. The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:
>
> (a) he or she has read the document;
>
> (b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> (6) Sanctions for Violation. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.
>
> (7) Sanctions for Frivolous Claims and Defenses. In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages.

Under MCR 2.625(A)(2), "if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." In turn, MCL 600.2591(3) states:

> (a) "Frivolous" means that at least 1 of the following conditions is met:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

> (*iii*) The party's legal position was devoid of arguable legal merit.

Respondent argued in the trial court that sanctions were warranted because petitioner made a number of unsubstantiated allegations and "[t]he real events of October 3, 2019, have nothing to do with what was written by the Petitioner in the Sworn Statement." While the trial court never made a specific finding regarding respondent's allegations of frivolity, it did not award respondent sanctions. On appeal, respondent essentially asks this Court to make a factual finding that the allegations contained in the petition were frivolous. If we concluded that the record was insufficient to decide on this basis, this Court would have to remand the case to the trial court for further factual development. See *Loutts v Loutts*, 298 Mich App 21, 31; 826 NW2d 152 (2012). However, we find the factual record is sufficient to show that petitioner's allegations were not frivolous, and therefore, it was not an abuse of discretion for the trial court to decline to sanction petitioner.

As noted, a claim is frivolous if at least one of three conditions is met: (1) where the petitioner's purpose is to "harass, embarrass, or injure the prevailing party," (2) where there is "no reasonable basis" to believe the alleged facts are true, or (3) where the petitioner's "legal position was devoid of arguable legal merit." MCL 600.2591(3)(a). Respondent's arguments on this point are unclear, although it appears his argument involves the first two conditions.

Looking to the first condition, respondent argues that petitioner filed for the PPO because she "wanted to get [respondent's] CPL suspended." Although respondent cites to the timing of the petition for the PPO in relation to another motion in respondent's criminal case, respondent provides no evidentiary support, outside his own conjecture about timing, showing that petitioner's purpose in seeking the PPO was simply to suspend respondent's CPL. By failing to present evidence showing petitioner "wanted to get [respondent's] CPL suspended," respondent fails to establish the factual predicate necessary to support this argument. *Great Lakes Div of Nat'l Steel Corp v City of Ecorse*, 227 Mich App 379, 424; 576 NW2d 667 (1998) ("A party may not leave it to this Court to search for a factual basis to sustain or reject its position."). In addition, respondent's argument also appears to be premised on the assertion that petitioner made inaccurate statements about when the pertinent events occurred. But, even if petitioner inaccurately stated the dates of the events, there were sufficient facts presented, and verified, about what occurred so as to preclude a finding of frivolousness warranting sanctions.

As to the second condition, respondent appears to take issue with petitioner's assertion that he "was calling and txting [sic] my children last night till 12am [sic] this morning." According to

respondent, his actions in this regard were that of a "concerned parent." While we take no position on whether respondent's repeated phone calls to TM were out of "concern" for TM's welfare, we note that the question before this Court is whether there is a "reasonable basis to believe that the facts underlying that party's legal position were in fact true." MCL 600.2591(3)(a)(*ii*). Here, neither petitioner nor respondent dispute the repeated phone calls—what they dispute is the reason for these phone calls. On this point, the trial court found that petitioner's testimony "was more credible" than respondent's testimony. Again, this Court defers to the trial court on issues of witness credibility. See *Pickering*, 253 Mich App at 702.

Petitioner's allegations were supported by undisputed evidence that respondent placed the tracking application on TM's phone, that respondent's counsel and respondent's father were taking photographs and video of petitioner, and that there was a previous domestic violence charge against respondent. Although respondent asserts that these allegations did not give rise to the level necessary for charges of stalking or assault, respondent misreads the standard. Again, a petitioner may obtain a PPO against a domestic partner where "there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed . . . ." MCL 600.2950(4). Though the evidence may not have shown that respondent's actions rose to the level of assault or stalking, the trial court could conclude that it showed petitioner had reasonable cause to believe respondent would commit one of the listed acts under MCL 600.2950(1). Having determined that petitioner established reasonable cause for the trial court to issue the PPO, respondent's factual allegations in the petition were not frivolous. Accordingly, the trial court did not abuse its discretion in failing to sanction petitioner.

Affirmed.


/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Anica Letica

-15-